Argued February 3, affirmed September 10, 1969

STEVENSON, *Respondent, v.* HOLZMAN, *Appellant.*
BOGGS, *Respondent, v.* HOLZMAN, *Appellant.*

458 P2d 414

*Billy L. Williamson,* Deputy District Attorney, Portland, argued the cause for appellant. With him

on the briefs was George Van Hoomissen, District Attorney.

*Charles J. Merten,* Portland, argued the cause and filed a brief for respondents.

Marian C. Rushing, City Attorney, Portland, and other city attorneys filed a brief amici curiae on behalf of appellant.

Robert B. Conklin and Jack B. Schwartz, Portland, filed a brief amici curiae on behalf of the American Civil Liberties Union.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE, and HOLMAN, Justices.

McALLISTER, J.

The question presented by this appeal is whether an indigent person accused of the violation of a municipal ordinance has a constitutional right to the assistance of counsel at public expense.

The petitioner was charged in the Municipal Court of Portland with the crime of disorderly conduct.[①] He pleaded not guilty, was tried, convicted and sentenced to six months in jail.[②] It is conceded that at the time

---

[①] "It shall be unlawful for any person to commit any violent, riotous or disorderly act or publicly entice or encourage any other person to presently commit any violent, riotous or disorderly act, or to use any profane, abusive or obscene language in any street, house or place whereby the peace or quiet of the city may be disturbed, or to commit any indecent or immoral act or practice." Police Code of the City of Portland, Oregon (May 1, 1960) § 16-601 (Disorderly Conduct).

[②] "Any person violating any of the provisions of this Code shall upon conviction thereof be punished by a fine not exceeding five hundred dollars ($500) or by imprisonment for not exceeding six (6) months, or by both such fine and imprisonment." Police Code of the City of Portland, Oregon (May 1, 1960) § 16-201 (Penalty).

petitioner was convicted the court did not inform accused persons that if they were unable to employ counsel the court would appoint counsel to represent them and the court did not, in fact, appoint counsel for indigent defendants.

Claiming that he had been denied his constitutional right to the assistance of counsel, petitioner sought a writ of habeas corpus in the Circuit Court for Multnomah County, which writ was granted. Defendant appeals.

No contention is made here that petitioner was not indigent or that he waived his right to counsel. The defendant argues only that a person charged with violation of a municipal ordinance has no constitutional right to court-appointed counsel.

■ Both the Constitution of Oregon and the Constitution of the United States guarantee the right to counsel. If either constitution entitled petitioner in this case to the appointment of counsel we must affirm the trial court.

We will consider first the Constitution of the United States. The Sixth Amendment provides, *inter alia,* that:

> "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

This provision was made binding on the states in capital cases by *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 L ed 158, 84 ALR 527 (1932). In *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733 (1963), it was made binding on the states in all serious offenses. We need not pause here to

consider the period between *Powell* and *Gideon* when the aberrational rule of *Betts v. Brady*[8] prevailed.

Some courts have interpreted *Gideon* as requiring the appointment of counsel in all criminal prosecutions, but we think the holding of *Gideon* was not that broad. In the first place Gideon asked only that the rule of *Betts v. Brady* be abandoned in prosecutions for "a serious criminal offense."[9] Secondly, Mr. Justice Harlan in his concurring opinion assumed that *Gideon* applied only to offenses that "carry the possibility of a substantial prison sentence." He said: "Whether the rule should extend to *all* criminal cases need not now be decided." 9 L ed 2d at 809-810. Lastly, the Supreme Court has denied certiorari in at least three cases which squarely presented the question of whether *Gideon* applied to misdemeanors.[10] In *Winters v. Beck,* supra, n 5, Mr. Justice Stewart, in dissenting, said:

> "In Gideon v. Wainwright, supra, we said that 'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth.' No State should be permitted to repudiate those words by arbitrarily attaching the label 'misdemeanor' to a criminal offense. I think this Court has a duty to resolve the conflict and clarify the scope of Gideon v. Wainwright. I do not suggest what the ultimate resolution of this problem should be, but I do suggest that the answer cannot be made to depend upon artificial or arbi-

---

[8] 316 US 455, 62 S Ct 1252, 86 L ed 1595 (1942).

[9] Kamisar and Choper, *The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations*, 48 Minn L Rev 1, 62, n 270.

[10] Winters v. Beck, 385 US 907, 87 S Ct 207, 17 L ed 2d 137 (1966); Cortinez v. Flournoy, 385 US 925, 87 S Ct 314, 17 L ed 2d 222 (1966); DeJoseph v. Connecticut, infra.

trary labels of 'felony' or 'misdemeanor' attached to criminal offenses by 50 different States. Whatever one's view may be as to the appropriate exercise of this Court's certiorari jurisdiction, surely it is at least our duty to see to it that a vital guarantee of the United States Constitution is accorded with an even hand in all the States." 17 L ed 2d at 138.

See, also, Mr. Justice Stewart's dissent in *DeJoseph v. Connecticut*, 385 US 982, 87 S Ct 526, 17 L ed 2d 443 (1966).

If the right to counsel could be equated with the right to trial by jury, also guaranteed by the Sixth Amendment, our question would be answered. The Supreme Court has held without equivocation that the right to a jury trial does not apply to "petty offenses." In *Frank v. United States*, 395 US 147, 89 S Ct 1503, 23 L ed 2d 162, 166 (1969), the court said:

"The Sixth Amendment to the Constitution gives defendants a right to a trial by jury in 'all criminal prosecutions.' However, it has long been the rule that so-called 'petty' offenses may be tried without a jury. See, e. g., District of Columbia v Clawans, 300 US 617, 81 L Ed 843, 57 S Ct 660 (1937). For purposes of the right to trial by jury, criminal contempt is treated just like all other criminal offenses. The defendant is entitled to a jury trial unless the particular offense can be classified as 'petty.' Dyke v. Taylor Implement Mfg. Co., 391 US 216, 20 L Ed 2d 538, 88 S Ct 1472 (1968); Bloom v. Illinois, 391 US 194, 20 L Ed 2d 522, 88 S Ct 1477 (1968); Cheff v. Schnackenberg, 384 US 373, 16 L Ed 2d 629, 86 S Ct 1523 (1966)."

See, also, *Duncan v. Louisiana*, 391 US 145, 88 S Ct 1444, 20 L ed 2d 491 (1968). For this purpose the Supreme Court has accepted the congressional definition of a petty offense expressed in 18 USC § 1 as "[a]ny misdemeanor, the penalty for which does not

exceed imprisonment for a period of six months or a fine of not more than $500, or both. * * *" See *Frank v. United States*, supra, at 167, n 3.

We agree, however, with those courts that have held that the right to counsel is more essential to a fair trial than the right to a jury. The distinction has been pointed out with clarity by Knutson, C.J., in *State v. Borst*, 278 Minn 388, 154 NW2d 888, 894 (1967), as follows:

> "But even though the two rights derive from the same provisions of our Federal Constitution, they are not of equal significance when it comes to the matter of obtaining a fair trial. It is conceivable that a fair trial may be had before an impartial judge without a jury, but it is hardly conceivable that a person ignorant in the field of law can adequately defend himself without the assistance of counsel. Consequently, we do not consider the cases involving the right to a jury trial controlling in this area."

See, also, *James v. Headley*, 410 F2d 325, 331 (5th Cir 1969).

That the "petty offense rule" does not apply to all constitutional guarantees is illustrated by *Williams v. Oklahoma*, 395 US 458, 89 S Ct 1818, 23 L ed 2d 440 (1969) in which the Supreme Court applied the equal protection doctrine of *Griffin v. Illinois*, 351 US 12, 76 S Ct 585, 100 L ed 891, 55 ALR2d 1055 (1956) to the appeal of a delinquent driving conviction under an Oklahoma City municipal ordinance where the defendant was sentenced to 90 days in jail and a $50 fine. The opinion did not mention the "petty offense rule" reaffirmed three weeks earlier in *Frank v. United States*, supra.

Since the Supreme Court has not decided the ques-

tion, we must ourselves decide whether the Sixth Amendment right to counsel extends to prosecutions for misdemeanors, which term we use here to include violations of municipal ordinances and all criminal prosecutions not amounting to felonies. We hold that it does and are persuaded to our conclusion by two important considerations. The most important is the recognition that the assistance of counsel is a necessary ingredient of a fair trial regardless of the seriousness of the crime. As the Supreme Court said in *Gideon v. Wainwright*, supra:

> "* * * A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in Powell v. Alabama:
>
> " 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' " 9 L ed 2d at 805-806.

If our objective is to insure a fair trial in every criminal prosecution the need for counsel is not determined by the seriousness of the crime. The assistance of counsel will best avoid conviction of the in-

nocent—an objective as important in the municipal court as in a court of general jurisdiction.

A secondary consideration for our conclusion is the application of the Sixth Amendment right to counsel in the federal courts. In *Johnson v. Zerbst,* 304 US 458, 58 S Ct 1019, 82 L ed 1461 (1938) the court held that

"* * * [t]he Sixth Amendment withholds from Federal Courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of Counsel", 82 L ed at 1466,

and also said:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of Counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a Federal court's authority to deprive an accused of his life or liberty." 82 L ed at 1468.

There is no language in the opinion limiting the holding to serious offenses or excluding petty offenses.

*Evans v. Rives,* 126 F2d 633 (US App DC 1942) was a habeas corpus proceeding in which the petitioner had been convicted in juvenile court of refusing to provide for the support of a minor child and was sentenced to one year in jail. The court, in reversing, quoted at length from *Johnson v. Zerbst* and went on to say:

"It is further suggested by the District of Columbia that the constitutional guaranty of the right to the assistance of counsel in a criminal case does not apply except in the event of 'serious offenses.' No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. The purpose of the guaranty is to give assurance

against deprivation of life or liberty except strictly according to law. The petitioner would be as effectively deprived of his liberty by a sentence to a year in jail for the crime of non-support of a minor child as by a sentence to a year in jail for any other crime, however serious. And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one." 126 F2d at 638.

The Sixth Amendment mandate for the assistance of counsel applies alike to both state and federal courts, *Gideon v. Wainwright*, supra. If the Sixth Amendment requires the appointment of counsel for indigent misdemeanants in the federal courts, it must require like appointment in the state courts. Any other holding would result in unequal justice before the law.

■ We hold that no person may be deprived of his liberty who has been denied the assistance of counsel as guaranteed by the Sixth Amendment. This holding is applicable to all criminal prosecutions, including prosecutions for violations of municipal ordinances. The denial of the assistance of counsel will preclude the imposition of a jail sentence.

We are not persuaded by the argument that the cost of providing counsel for indigent misdemeanants will be burdensome. See Aschenbrenner and Belt, Cost Study: The Defense of Indigents in Misdemeanor Cases in the State of Oregon, Feb. 14, 1967. That study indicates that the cost of providing counsel to indigent misdemeanants in Oregon will amount to about $300,-000, or about one-twentieth of the amount received annually from fines by the state and its municipalities. We think the estimated amount is a modest fee for guaranteeing a fair trial in all criminal prosecutions.

Our holding conforms substantially with the recommendations of the President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*,[⑥] and with the standards relating to providing defense services promulgated by the American Bar Association Project on Minimum Standards for Criminal Justice.[⑦]

The constitutional right of indigent misdemeanants to court-appointed counsel has been upheld by other courts, including the following: *Bolkovac v. State*, 229 Ind 294, 98 NE2d 250 (1951); *State v. Borst*, supra (decision rested on supervisory power rather than on constitutional grounds); *McDonald v. Moore*, 353 F2d 106 (5th Cir 1965); *James v. Headley*, supra; *Beck v. Winters*, 407 F2d 125 (8th Cir 1969). Cases holding to the contrary include the following: *Hendrix v. City of Seattle* (Wash. 1969) 456 P2d 696; *City of Toledo v. Frazier*, 10 Ohio App2d 51, 226 NE2d 777 (1967); *State v. Brown*, 250 La 1023, 201 S2d 277 (1967); *Winters v. Beck*, 239 Ark 1151, 397 SW2d 364 (1965); *Watkins v. Morris*, 179 S2d 348 (Fla 1965).

Although we could rest our decision solely on the Constitution of the United States, we prefer to rely also on Article I, Section 11, of our Oregon Constitution, which provides: "In all criminal prosecutions, the

---

[⑥] "The objective to be met as quickly as possible is to provide counsel to every criminal defendant who faces a significant penalty, if he cannot afford to provide counsel himself. This should apply to cases classified as misdemeanors as well as to those classified as felonies. * * *" 154 NW2d at 895.

[⑦] "4.1 Criminal cases.

"Counsel should be provided in all criminal proceedings for offenses punishable by loss of liberty, except those types of offenses for which such punishment is not likely to be imposed, regardless of their denomination as felonies, misdemeanors or otherwise." Standards Relating to Providing Defense Services, Approved Draft, 1968, pp 37-38.

accused shall have the right * * * to be heard by himself and counsel; * * * ." We think the foregoing provision, no less than the Sixth Amendment, mandates the appointment of counsel for all indigent defendants whose conviction may result in a loss of liberty. Such a holding has been presaged by recent decisions, including the following: *Perry v. Williard*, 247 Or 145, 427 P2d 1020 (1967); *State v. Mayes*, 245 Or 179, 421 P2d 385 (1966); *Gebhart v. Gladden*, 243 Or 145, 412 P2d 29 (1966); *State v. Blank*, 241 Or 627, 405 P2d 373 (1965). In *Perry v. Williard* we said: "Recent decisions in our own court as well as in the United States Supreme Court have been widening and deepening our commitment to individual liberty and to equality before the law." 247 Or at 149.

The judgment of the trial court is affirmed.

PERRY, C.J., dissenting.

I am unable to agree with the conclusion reached by the majority in these cases.

It is clear from the majority opinion that they find no solid federal constitutional ground upon which to require the appointment of counsel in misdemeanor cases where the sentence imposed does not exceed six months and a fine of $500. As admitted, the Supreme Court of the United States has not imposed this obligation upon the states through the Fourteenth Amendment where the charge is a petty offense. Nor has the court by opinion required appointment of counsel upon the federal district courts.

It was only after the Congress of the United States acted to provide funds for counsel for indigent defendants that Rule 44 of the Federal Rules of Criminal Procedure was adopted to extend the right of assigned counsel in petty offenses. The right to assigned coun-

sel in the federal courts as to petty offenses rests, therefore, not upon federal constitutional rights, but upon public policy.

Article I, § 11 of the Constitution of the State of Oregon reads as follows:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

It is clear from reading this constitutional provision that it treats of felonies which can be tried only in the circuit courts of this state and has no reference to courts of inferior jurisdiction, such as municipal courts or recorder's courts, which are not courts of record and which often make no provision for trial by jury.

I agree that it may be good public policy to provide counsel for indigents where they are charged with

petty crimes, but since a constitutional right is not infringed upon, this court should not attempt by judicial fiat to determine the public policy of the state. That duty is imposed upon the people, not the courts.

The majority refer to *Williams v. Oklahoma*, 395 US 458, 89 S Ct 1818, 23 L ed2d 440 (1969), as some authority for the position taken. However, the Supreme Court of the State of Washington has accepted the views expressed in this dissent, holding that an indigent who may have an appeal from his conviction in the municipal court is not entitled to free counsel in the municipal court. *Hendrix v. City of Seattle*, 76 Wn 2d 142, 456 P2d 696 (1969).

Provisions for an appeal from the municipal court, which is not a court of record, to the circuit court is provided for each of the offenses charged. If it was here charged that the defendants were unable to appeal because of their indigency or were in anywise obstructed in attempting to appeal, then a constitutional question under *Williams* would be before this court. Such, however, are not the facts before us, and, therefore, the writ of habeas corpus should not be substituted for an appeal.

For the reasons above expressed, I would reverse.